This appellant was found guilty under Counts 2 and 4 of an indictment. The only two other counts therein had been nol-prossed. Count 2 charged in pertinent part the following:
 ". . . [Maurice McKennie] did, with intent to defraud or deceive, make or cause to be made a false statement of material fact in a claim or application for payment from the Medical Services Administration of Alabama, to wit: The 1977 Uniform Cost Report for Nursing Facilities under Title XIX (Medicaid), for the period January 1, 1977 to June 30, 1977, knowing the same to be false, in the amount of, to wit: $81,028.40 which amount is included in the figure to wit: $181,236.25 which appears in Schedules C and K of the said 1977 Uniform Cost Report for Nursing Facilities under Title XIX (Medicaid) for the period January 1, 1977 to June 30, 1977, which said amount of to wit: $81,028.40 was alleged to have been for equipment purchased by the said Maurice McKennie for Flint City Nursing Home, when in fact some of the items of equipment so claimed had not been purchased and used at the Flint City Nursing Home, or some of the prices attributed to particular items of equipment purchased were false, or which said amount to wit: $81,028.40 included loans not the indebtedness of Flint City Nursing Home, against the peace and dignity of the State of Alabama."
The only difference between Counts 2 and 4 is that in Count 2 the time involved stated is "for the period January 1, 1977 to June 30, 1977," while in Count 4 it is alleged that it is "for the period July 1, 1977 to June 30, 1978." *Page 708 
The court fixed defendant's punishment at imprisonment for three years and sentenced him accordingly; upon consideration of defendant's application for probation, the following order was made:
 "And the defendant having heretofore applied for the benefit of probation and having requested that he be given a suspended sentence and upon consideration of such request the court is of the opinion that the same should be granted. It is therefore considered and ordered by the Court that the sentence of the law imposed upon the defendant in this cause be and the same is hereby suspended and the defendant placed on probation for three years conditioned upon defendant's serving eight weeks in the Montgomery County Jail and making restitution to the State of monies collected illegally."
The law that defines the crime for which defendant was charged and convicted is found in Acts 1976, No. 645, p. 895, which was superseded by Acts 1980, No. 80-539, p. 837, which left unchanged that part of Act No. 645 of Acts 1976, that is now set forth in Code of 1975 (1982 Cum.Supp.) § 22-1-11 as follows:
 "(a) Any person who, with intent to defraud or deceive, makes, or causes to be made or assists in the preparation of any false statement representation or omission of a material fact in any claim or application for any payment, regardless of amount, from the medicaid agency, knowing the same to be false; or with intent to defraud or deceive, makes, or causes to be made, or assists in the preparation of any false statement, representation or omission of a material fact in any claim or application for medical benefits from the medicaid agency, knowing the same to be false; shall be guilty of a felony and upon conviction thereof shall be fined not more than $10,000.00 or imprisonment for not less than one nor more than five years, or both.
". . . .
 "(e) Any two or more offenses in violation of this Section may be charged in the same indictment in separate counts for each offense and such offenses shall be tried together, with separate sentences being imposed for each offense of which defendant is found guilty."
A major contention of appellant is that "The trial court erred in denying defendant's motion to dismiss for proper venue." Appellant argues that whatever offense, if any, was committed by defendant was not committed in Montgomery County, the county in which the indictment was preferred and in which the trial and conviction occurred. Appellant relies upon Code of Alabama 1975, § 15-2-2 that provides that "Unless otherwise provided by law, the venue of all public offenses is in the county in which the offense was committed." To be considered also, however, is Code, § 15-2-6, as follows:
 "When an offense is committed partly in one county and partly in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, venue is in either county."
Appellant is correct in stating in his brief that "Flint City Nursing Home is located in Flint City, Alabama, near Decatur" and that "Cost reports were prepared, and the accounting work necessary to prepare the costs reports were done there." However, the evidence is clear and undisputed that the "claim or application for payment from the Medical Services Administration of Alabama" alleged in each count of the indictment as supported by the "Uniform Cost Report for Nursing Facilities" was sent or caused to be sent by defendant to that agency at Montgomery, in Montgomery County.
Appellant seeks to distinguish the instant case from MedicalService Administration v. Dickerson, Ala., 362 So.2d 906
(1978), in which it was held that Montgomery County, as well as Cullman County, was a proper venue in a case based upon a complaint that defendant had sent "faulty financial statements" to the plaintiff at "its Montgomery offices" and that plaintiff "relied upon these statements in reimbursing the nursing homes." The appellant's only point of *Page 709 
distinction is that the cited case "was a civil case." We fail to see that the same rationale does not apply in this, a criminal, case.
Appellant also attempts to distinguish the instant case fromSeay v. State, 21 Ala. App. 339, 108 So. 620 (1926), cert. denied, 214 Ala. 666, 108 So. 622, in which it was held that the presentation in Pike County of an instrument that had been forged in another county constituted an utterance of the forged instrument and that the prosecution for forgery was proper in Pike County.
In our opinion, the submission in Montgomery County to the Medical Services Administration of Alabama of defendant's claim "or application for payment," which included a "Uniform Cost Report for Nursing Facilities," gave rise to a situation in which Code of Alabama, § 15-2-6, as quoted above, applies and proper venue was in Montgomery County.
Another issue presented by appellant pertains to the following portion of the transcript, as quoted in appellant's brief, during the direct examination of State's witness David Billingsley:
 "Q. What did you do and where did you go in Greenville, South Carolina?
 "A. I went to the office of United Medical and Surgical Supply Company and interviewed Mr. C.D. Stone in regard to invoices and whatever other supporting documents he may have in order to substantiate a purchase money security agreement.
"Q. Did he have them?
"A. No, sir, he did not.
"MR. UPCHURCH: I object, your Honor, this is hearsay.
 "THE COURT: Did he have them? I don't see That calls for hearsay. Overruled.
"Q. You may answer, Mr. Billingsley.
"A. Sir?
"Q. Did he have any documents?
"A. No, sir."
The portion of the transcript quoted by appellant in his brief does not, we think, show clearly whether the information sought by the question constituted hearsay, and we are unable to determine therefrom that it did or that the trial court was in error in ruling otherwise. Furthermore, the objection was made after the witness had answered the question and was too late.
 "When a question is asked of a witness calling for inadmissible matter, it is mandatory upon the party against whom it is offered to object after the question but before the answer. The effect of such a rule is that a timely objection is a condition precedent to assigning the admission of such an answer as grounds for error on appeal." Gamble, McElroy's Alabama Evidence, § 426.01 (3) (1977)
The only other issues presented by appellant (A, B, C and D) pertain primarily to action of the trial court in denying "defendant's motion for directed verdict of acquittal." By Issue A, appellant contends that there was error in denying such motion "based on the failure of proof that certain `items of equipment so claimed had not been purchased and used at Flint City Nursing Home,' as claimed by the indictment." By Issues B and C, respectively, appellant asserts that the denial of the motion was error "based on the failure of proof that `some prices attributed to particular items of equipment purchased were false,' as claimed by the indictment" and in denying such motion "on failure of proof that an amount shown on Cost Reports `A' and `B' `included loans not the indebtedness of Flint City Nursing Home,' as claimed by the indictment." By Issue D, appellant urges that the "trial court erred in denying defendant's motion for directed verdict of acquittal based on failure of proof to support the allegations of the indictment."
It is to be seen from the above and from defendant's "motion for directed verdict of acquittal" that defendant sought a "directed verdict of acquittal," on separate and several grounds. In Issues A, B and C, appellant contends that he was entitled to a directed verdict of acquittal as to each of the three alternative means of committing the offense as alleged in each count of the indictment. The validity of the indictment was not challenged by demurrer or otherwise. *Page 710 
In this connection, reference is made to Code of Alabama 1975, § 15-8-50, as follows:
 "When an offense may be committed by different means or with different intents, such means or intents may be alleged in an indictment in the same count in the alternative."
Both parties apparently treated the indictment as in compliance with § 15-8-50, and no contention to the contrary is here presented.
In our opinion, defendant's motion "for directed verdict of acquittal" did not preserve for review, separately and severally, the question of the sufficiency of the evidence to support each of the alternative averments of the indictment. No written charge on the subject was requested. Although motions for a directed verdict have been appropriate procedure in civil cases in the courts of Alabama for a long time pursuant to Rule 50 of Alabama Rules of Civil Procedure, they are not now appropriate procedure in criminal cases in the state courts of Alabama either by rule or by law. Rule 29 (a), Federal Rules of Criminal Procedure, has abolished the motion for directed verdict in criminal cases and substituted for it the motion for judgment of acquittal. Such has been the fate since the trial of instant case of Rule 12, Alabama Rules of Criminal Procedure, Temporary Rules, which had a history of suspension for the period from April 6, 1981, to March 1, 1982, and has provided thereafter for motions for "Judgment of Acquittal."
In defendant's motion for a new trial, which was denied by the trial court, defendant raised the question of the sufficiency of the evidence to uphold the verdict. By such motion and the court's ruling thereon, defendant has preserved for review the question of the sufficiency of the evidence to uphold the verdict, which we now proceed to discuss, after an unduly prolonged consideration of the recondite record herein and the briefs of counsel, which unfortunately had a disorderly beginning that has not tended to be helpful in our effort to arrive at a correct determination of the problem now discussed. No brief had been filed by appellant on the submission of the case on appeal. The submission was taken on brief of appellee and on the merits. Thereafter appellant's brief was filed to which there was a reply brief by appellee.
The parties are in agreement that the figure $81,028.40 that is in each count of the indictment, or at least substantially that amount, represents an amount that defendant as the owner and operator of Flint City Nursing Home had claimed as the correct amount to be allocable to major movable equipment in each alleged cost report that would have been a material factor in a correct determination by Medical Services Administration of Alabama of the amount he was to be paid out of available public funds for the operation of Flint City Nursing Home during the period covered by each of the Uniform Cost Reports that defendant made or caused to be made. We have no difficulty in determining that defendant made or caused to be made each of said reports as the report for the first half of 1977 is signed by defendant and verified before a notary public and a certified public accountant, who certified that he prepared the report and the other report was signed by and verified by the then manager or administrator of the nursing home.
In August of 1976 the defendant executed a Purchase Money Security Agreement in favor of United Medical and Surgical Supply Corporation of Greenville, South Carolina, in which there are numerous items of movable equipment listed and which shows on the first page thereof the "Cash Price of Goods, Sales" as "$81,028.40." It also shows as the "Amount Cash of Down Payment" the sum of "$20,000.00," and the "Amount of the Finance Charge" as "$30,771.60." It is to be noted that the said quoted amount of $81,028.40 is exactly the same sum as the smaller of the two sums alleged in each of Counts 2 and 4 of the indictment. The evidence shows that by reason of many vicissitudes in the operation of Flint City Nursing Home from the time it was acquired by defendant on November *Page 711 
1, 1973 until August, 1976, which included a period in which the nursing home had been leased by defendant for approximately two years to an individual. Thereafter for nearly a year it was managed by a management corporation, with no responsibility exercised by defendant. According to appellant's brief, the management corporation, "failed to supply McKennie with operating statements as required by the management contract" and when "McKennie re-entered the nursing home in July of 1976, he discovered that nursing home checks had bounced, employees were unpaid, that federal and state payroll tax liabilities were due, and their lien had been filed by the State (294-295)." The defendant's explanation of his execution of the document in favor of United Medical and Surgical Supply Corporation, which was secured, partly at least, by what purports to be a list of movable equipment of Flint City Nursing Home, is in part as follows:
 "Q. Mr. McKennie did you also receive a statement from United Medical and Surgical Supply Corporation regarding this equipment that is shown on defendant's exhibit 2 from United Surgical?
 "Q. Did they send you a bill for those, or an invoice?
"A. I assume they did.
"Q. Did you know when, if you did get a statement?
 "A. No, as I said this was a running account over a period of almost two and a half years, and I really didn't know what the balance of the account was because we didn't get statements month to month normally until after I got rid of Denbeck people and Mr. Stone [of United Medical and Surgical Supply] called me and told me that that bill was so big that they had to have payment pretty soon. I told him then, and I think he told me what the bill was at that time, but I don't believe he sent me a statement as to the amount.
 "Q. Okay. Was there any discussion at the time you talked with Mr. Stone when he called you about paying the bill, about how you were going to pay it?
 "A. I told him, Mr. Stone, you know there is no way for me to pay that size bill all at one time, and if you can arrange some sort of monthly payment, or contract, or whatever, that's the way I will have to pay you. He agreed that he would try to do that and he would get back with me.
 "Q. Did he mention how that was going to be secured, if it was going to be secured?
 "A. He said he would have to take a mortgage on this equipment, the new equipment that he had already sold me, plus the other equipment to secure the entire bill.
 "Q. All right. Now, when you say the other equipment what other equipment are you talking about?
 "A. The other equipment that was in the nursing home already.
. . . . .
 "A. Well, when we got there, in fact his plane was already setting and waiting and he was almost late, but he said, Mac, I have prepared this contract for the balance of this account you owe me, and while you and your wife are both here together, I would like for you to sign it. I said, well, what are you going to do with it, and he said I am going to try to sell it to a finance company so you can repay it on a monthly basis.
"Q. All right, sir, did you sign that agreement?
"A. Yes, sir.
"Q. Did he tell you what kind of an agreement it was?
 "A. No, other than he told me I would have to mortgage. We have to take the mortgage on the new equipment plus the old equipment to secure the indebtedness, because the indebtedness was bigger than the amount of new equipment.
 "Q. At the time that you signed this, or he presented it to you, there was a considerable amount owed him for loans that you had used in the Flint City Nursing Home?
"A. Yes, sir. *Page 712 
"Q. Did you read the document you signed?
"A. No, not really.
 "Q. Oh, excuse me, was the document completed, was it filled out when you signed it?
"A. No."
Eight witnesses, including two certified public accountants, testified on call of the State, and two witnesses, including defendant, testified on call of defendant. About fifty exhibits were introduced in evidence, with approximately the same participation by each party, including some lengthy documents and a large number of photographs, as well as the tape of a recorded telephone conversation between a witness for the State and the defendant that was played to the Judge and the jury. We have reviewed all of the exhibits except the tape, to which we have not listened, as neither party has asked that we do so, and we do not believe that it, when considered with all the other evidence in the case, would alter our determination of the case.
We are not convinced that the evidence is conclusive as to defendant's guilt, but we are convinced that the evidence presented was sufficient to take the case to the jury and that the trial court did not abuse its discretion in its holding in effect that the verdict was not contrary to the weight of the evidence. The trial judge and the jury had the opportunity, which an appellate court does not have, to observe carefully the witnesses as they testified, which in this type of case especially make them better judges of the facts than anyone else. The record does not indicate any kind of prejudice against defendant or any malice on the part of any individual participating in the prosecution of the case. This is vividly illustrated by the testimony of an attorney, who at the time was employed in the "Attorney General's office, specifically in the Medicaid Fraud Division", and as such interviewed the defendant. His testimony was in part as follows:
"Q. He indicated a willingness to cooperate with you?
"A. Yes, sir.
"Q. A willingness that he had nothing to hide?
"A. He was very cooperative, yes, sir.
"Q. Did he talk like a man who had nothing to hide?
"A. I can't tell, sir.
 "Q. Is your judgment from the way he talked? You have interviewed witnesses before?
"A. Yes, sir.
"Q. Many times, haven't you?
"A. Yes, sir.
 "Q. Both as an attorney general, and as a private practitioner?
"A. Yes, sir.
 "Q. Did he talk like somebody that had something to hide?
"A. He didn't act like it. No, sir.
"Q. He talked like a bad business man, didn't he?
"A. Very much so, yes sir."
Notwithstanding our reluctance to believe that appellant was deliberately guilty of highly flagrant fraud, but, like the witness we have just quoted apparently tended to believe, that his conduct was largely related to lack of business acumen, we cannot say that the verdict was palpably wrong and unjust. As much as can be said in defendant's favor that he was a victim of unfortunate circumstances that could be attributable to others in the operation of Flint City Nursing Home, and to the inability of defendant as a business man to cope with the unfortunate circumstances that befell him, it cannot be said that he was a novice as to nursing homes. He had performed renovation work on 4 or 5 nursing homes and had owned or had an interest in 3 of them in Alabama. Although apparently not well acquainted with a "Uniform Cost Report for Nursing Facilities under Title XIX (Medicaid)", he executed and verified one of them under the following certificate:
 "I hereby certify that I have examined the accompanying Uniform Cost Report and the allocation therein between covered and non-covered services, as applicable for the period January 1, 1977 through *Page 713 
June 30, 1977 and that, to the best of my knowledge and belief they are true and correct statements prepared from the books and records of Flint City Nursing Home, in accordance with applicable instructions, except as noted."
Frye v. State, Ala.Cr.App., 369 So.2d 892 (1979) cited by appellant is not a precedent for our holding that the verdict of the jury should not be disturbed under the facts of the instant case, for the facts in Frye were substantially different from the facts of this case, but it is authority for the proposition that the verdict herein should not be disturbed, unless it is "clearly wrong and unjust." To that extent we follow in its path.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur, except BOWEN, J., who concurs in the result only.